IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:19-CR-85-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| QUENTIN TAVARIS BRYANT, | ) | |
| a/k/a "Boobie" | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution (DE 62) and motion to dismiss the count one of indictment. (DE 59). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motions be denied. (DE 84). Defendant timely filed objections, and the government responded. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motions are denied.

**STATEMENT OF THE CASE**

Indictment filed December 19, 2019, charges defendant with conspiracy to distribute and possess with the intent to distribute a mixture and substance containing 100 grams or more of heroin, 40 grams or more of fentanyl, and a quantity of cocaine and cocaine base (count one); distribution of a quantity of heroin (count two); distribution of a quantity of heroin and aiding and

abetting (count three); and possession with intent to distribute 100 grams or more of heroin, 40 grams or more of fentanyl, and a quantity of cocaine and cocaine base (count four).

On November 16, 2020, defendant filed the instant motion to dismiss count one of the indictment, arguing that the language is impermissibly vague, in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. That same day, defendant filed the instant motion to suppress all evidence obtained March 1, 2019, pursuant to a warrant authorizing search of a residence at 723 Clermont Road New Bern, North Carolina ("the residence"), allegedly in violation of the Fourth Amendment to the United States Constitution. In support, defendant relies upon 1) a search warrant issued March 1, 2019, in Craven County Superior Court (the "search warrant"); 2) a police report authored by Sergeant Michael Sawyer ("Sergeant Sawyer"); 3) a November 14, 2018, laboratory report; and 4) an informal transcript of a March 1, 2019, dispatch recording. The government responded in opposition to both motions on December 14, 2020, also relying upon the search warrant. With leave of court, defendant replied in support of his motion to suppress December 17, 2020, and the government filed surreply January 4, 2021.

The magistrate judge held an oral argument hearing on the instant motion March 15, 2021. M&R entered April 9, 2021, and defendant filed objections April 23, 2021. The government responded July 1, 2021.

### STATEMENT OF FACTS

The court incorporates herein for ease of reference the facts set forth in the M&R.

> In early March 2019, Investigator Desmarais applied for a search warrant from a North Carolina judge. The application packet contained a Statement of Probable Cause, which outlined, under oath, the facts Desmarais believed established probable cause to issue the warrant. The Statement set out these facts about Bryant's alleged criminal activity.
>
> In 2018 and 2019 the Craven County Sheriff's Office investigated whether Bryant was selling heroin in New Bern, North Carolina. Search Warrant Appl. passim,

2

D.E. 63–1 As part of this investigation, law enforcement had a confidential informant buy heroin from Bryant in December 2018. Id. at 81. Both before and after the search, officers searched the informant for contraband and found none. Id. The next month the confidential informant, at the behest of law enforcement, arranged to buy more heroin from Bryant. Id. at 9. Once again, before and after the buy, officers searched the informant for contraband and found none. Id. Bryant told the informant to go to a specific location and said he was sending "my guy" to deliver heroin. Id.

The confidential informant went to the specified location and bought heroin from a person driving a black, Chevrolet Tahoe. Id. Law enforcement later learned that the person driving the Tahoe was Kabrio Abrams, one of Bryant's associates. Id.

About two months later, on March 1, 2019, officers conducted surveillance at 723 Clermont Road, New Bern, North Carolina, an address associated with Bryant. Id. at 9–10. They saw the Tahoe from the January 2019 controlled buy leave 723 Clermont Road and head to a shopping center. Id. at 10. Once at the shopping center, the Tahoe's driver met with the driver of a white Mitsubishi. Id. Officers believed that the way the vehicles met was "indicative of a hand to hand narcotics transaction." Id.

Soon after, officers followed the Mitsubishi as it left the shopping center and eventually pulled it over. Id. The Mitsubishi's driver, Daniel Kirby, told the officers that he had just tried to purchase heroin from "Boobie." Officers knew this to be a nickname for Bryant. Id. According to Kirby, Boobie got nervous and drove away without completing the sale. Id.

Meanwhile, back at 723 Clermont Road, Desmarais saw the Tahoe return. Id. It stayed at the address for several minutes and then left again. Id. Desmarais and another investigator followed the Tahoe and eventually pulled it over. Id. They found Abrams, the Tahoe's registered owner, behind the wheel. Id. Since they had a warrant for Abrams's arrest for the January 2019 controlled purchase, they arrested him. Id.

With Desmarais pursuing Abrams, Investigator Drake and Sergeant Sawyer, saw Bryant leave 732 Clermont Road in a Hyundai. Id. at 11. The officers followed Bryant and eventually tried to pull him over. Id. Bryant did not stop and a chase ensued. Id. at 11.

During the chase, officers saw Bryant throwing two large white bags from the vehicle. Id. Law enforcement later learned that the bags held about 130 grams of heroin and about 66 grams of suspected cocaine. Id. They also recovered a roll of aluminum foil and blue latex gloves that they saw Bryant throw from the car. D.E. 63–1 at 11.

3

Officers eventually caught up to Bryant and arrested him. Id. When they searched the Hyundai, they found two more bags of cocaine. Id. at 12.

Based on this information, Desmarais asked for a warrant to search 723 Clermont Road. Id. He believed he would find drugs and evidence of drug sales at the address. Id. A state judge issued a warrant authorizing the search. Warrant, D.E. 63–1 at 18. And, as expected, officers found materials indicative of drug trafficking there as well as documents tying Bryant to the property. Property Receipt, D.E. 72–1 at 17–21.

(M&R (DE 84) at 1-3).

## COURT'S DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Analysis

    1.  Motion to Suppress

        a.  Probable Cause

The Fourth Amendment to the United States Constitution secures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

4

Case 4:19-cr-00085-FL   Document 94   Filed 07/26/21   Page 4 of 18

seizures." U.S. Const. amend. IV. "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004) (quoting California v. Carney, 471 U.S. 386, 390 (1985)). Additionally, to be valid, a search warrant must "contain a particular description of the place to be searched, and the persons or things to be seized" and "be based upon probable cause, supported by Oath or affirmation." United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (citing Dalia v. United States, 441 U.S. 238, 255 (1979)).

"The probable cause standard is not defined by bright lines and rigid boundaries." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992). Rather, "the standard allows a magistrate to review the facts and circumstances as a whole and make a commonsense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Indeed, "the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). This standard "does not demand showing that such a belief be correct or more likely true than false." Id.

When reviewing a magistrate's probable cause determination, "[the court's] inquiry is directed to whether the magistrate had a substantial basis for his conclusion that probable cause existed." Id. In conducting this inquiry, "[the court] must accord great deference to the magistrate's assessment of the facts presented to him." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). Additionally, "the reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Importantly, "reviewing courts must resist the temptation to 'invalidate warrants

5

by interpreting affidavits in a hypertechnical, rather than a commonsense, manner.'" Blackwood, 913 F.2d at 142 (quoting Gates, 462 U.S. at 236).

Here, defendant objects to the magistrate judge's determination that the search warrant for the residence was supported by probable cause, arguing that: 1) the search warrant was based upon stale information, 2) there is a lack of nexus between the alleged criminal activity and the residence searched, 3) an informant referenced in the affidavit was not credible, and 4) vague language in the search warrant affidavit precludes a finding of probable cause.[1] The court addresses each argument, in turn below.

i. Timing

First, defendant argues the search warrant was based upon "stale" information. Specifically, defendant contends that the alleged drug activity in December 2018 and January 2019 was too remote to support a finding of probable cause in March 2019.

"A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." United States v. Bosyk, 933 F.3d 319, 330 (4th Cir. 2019) (quotation omitted). This determination is not made "by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984) (quotation omitted). Rather, the court "must look to all the facts and circumstances of the case, including the

---

[1] Defendant objects to the magistrate judge's purported findings of fact. (See Obj. (DE 85) 1-2). However, as reflected in the M&R, the magistrate judge was summarizing the facts stated in the search warrant affidavit, rather than making independent factual determinations. (See M&R (DE 84) 1-3) ("The Statement set out these facts about Bryant's alleged criminal activity . . ."). Defendant also objects to the magistrate judge's recitation of legal standards because it does not include the following proposition set forth in United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996): "When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." (Obj. (DE 85) at 2). The analysis in the M&R adheres to this rule, even though it is not specifically cited. Finally, defendant objects to statement in M&R that the search of the residence yielded "documents tying defendant to the property." (Obj. (DE 85) at 2). This statement, regarding execution of the search warrant, did not factor into the magistrate judge's analysis of the sufficiency of the search warrant affidavit. As such, these objections do not provide a basis to the reject the M&R.

6

nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." Id. Ultimately, the court's "fundamental concern," is whether "the facts alleged in the warrant furnish probable cause to believe, at the time the search was actually conducted, [ ] evidence of criminal activity was located at the premises searched." Id.

Here, the factual matter underlying the search warrant affidavit was not stale. In his affidavit, Investigator C. Desmarais ("Investigator Desmarais") testified that, just hours before seeking the warrant, he saw two vehicles leave the residence and engage in drug-related activity. (DE 63-1 at 9-11). One of the vehicles, a Tahoe, was also involved in the alleged drug activity that occurred in January 2019. (Id. at 10). The presence of the Tahoe connects the previous alleged activity with events that occurred on March 1, 2019, suggesting that the alleged drug activity was ongoing. Cf. United States v. Farmer, 370 F.3d 435, 439 (4th Cir. 2004) ("The ongoing nature of [defendant's] counterfeit clothing operation rendered the recency of the information in [the officer's] affidavit less crucial, and suggested that probable cause was not diminished solely by the passage of time."). Overall, it reasonably could be inferred from facts set forth in the affidavit that evidence of criminal activity would be found at the residence, and the issuing judge had a substantial basis for concluding that probable cause existed.

      ii.  Nexus between Illegal Activity and the Residence

Next, defendant argues that there is a lack of nexus between the alleged criminal activity and the residence searched.

"[A] sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought to the defendant's residence." United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (quotations omitted). Indeed, "probable cause can be inferred from the circumstances,

7

and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993).

Here, there is ample evidence in the record to draw a connection between the alleged drug activity and the residence, including the following. On March 1, 2019, while conducting surveillance on the residence, law enforcement observed the Tahoe, which was involved in a previous controlled buy, leave the residence and meet a white Mitsubishi "in a manner indicative of a hand to hand narcotics transaction." (DE 63-1 at 10). Shortly thereafter, law enforcement conducted a traffic stop on the driver of the White Mitsubishi, Daniel Kirby ("Kirby"), who told law enforcement that he had just attempted to purchase heroin from defendant, but that defendant left without completing the transaction because he became nervous. (Id.). Law enforcement then observed the Tahoe return to the residence. (Id.). A little while later, law enforcement observed a gold Hyundai leave the residence and attempted to perform a traffic stop on it. (Id. at 11). However, the Hyundai, which was driven by defendant, failed to stop, and a chase ensued. (Id.). During the chase, law enforcement observed two white bags, which contained controlled substances, as well as drug paraphernalia, being thrown from the Hyundai. (Id.). In sum, this evidence is sufficient to arrive, in a commonsense manner, at the conclusion that defendant used the residence and kept items related to his drug trafficking activities at the residence.

Defendant argues, nonetheless, that the evidence of a nexus is insufficient because the affidavit does not provide the exact distance between the prior drug activity and the residence or the distance between the chase of the Hyundai and the residence. This argument is unpersuasive. The affidavit need not set forth the exact physical distance between drug related events and the residence. As noted, "reviewing courts must resist the temptation to invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." Blackwood, 913

F.2d at 142.  The key facts here are that law enforcement personally observed the Hyundai leave the residence.  When law enforcement attempted to stop the Hyundai, defendant refused to stop and threw controlled substances and drug paraphernalia out of the Hyundai.  Law enforcement did not observe the Hyundai make any stops after leaving the residence, which allows the reasonable inference that the controlled substances and drug paraphernalia that defendant threw out of the window were taken from the residence. Those facts are sufficient to establish probable cause to search the residence, even though the affidavit did not set forth the exact distance between the residence and the location where the chase ultimately concluded.

Those facts also distinguish this matter from <u>Lalor</u>, a case cited by defendant.  In <u>Lalor</u>, the Fourth Circuit found that an affidavit was "devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at [the place to be searched]", where the affidavit failed to "explain the geographic relationship between the area where the drug sales occurred and [the place to be searched]."  996 F.2d at 1582-83.  Crucially, however, in <u>Lalor</u>, law enforcement did not observe the defendant throw controlled substances out of a vehicle after leaving the place to be searched, without making any stops during the interim.  Therefore, <u>Lalor</u> is instructively distinguishable.

Defendant also asserts there is a lack of nexus due to an alleged false statement in the search warrant affidavit.  Specifically, defendant highlights the following statement in the affidavit: "Investigator Drake and Sawyer observed Bryant leave the 723 Clermont Road address driving gold in color Hyundai Equus."  (Obj. (DE 85) at 6).  According to defendant, this statement is false because Sergeant Sawyer's report did not state that he actually saw <u>defendant</u> leave the residence, but rather, that he saw <u>a car registered to defendant</u> leave the residence.  This argument is beside the point, because the target of the search warrant was the residence, not defendant.

9

Case 4:19-cr-00085-FL   Document 94   Filed 07/26/21   Page 9 of 18

Moreover, when the car chase concluded, defendant was determined to be the driver of the car. (DE 63-1 at 11). Thus, the information raised by defendant does not undermine the nexus between the residence and defendant's drug trafficking activities.

In sum, it reasonably could be inferred from facts set forth in the affidavit that evidence of a crime would be found at the residence, and the issuing judge had a substantial basis for concluding that probable cause existed.

### iii. Credibility

Next, defendant challenges Kirby's credibility on grounds that the affidavit does not indicate whether he was a reliable informant, and other facts in the affidavit undermine his credibility.

Although the affidavit does not explicitly state that Kirby was reliable, law enforcement spoke to him in person, immediately after observing him meet with the Tahoe "in a manner indicative of a hand to hand narcotics transaction." (DE 63-1 at 10). Kirby's close proximity to the criminal activity at issue, and the fact that law enforcement spoke to him in person, enhance his credibility. See United States v. Mitchell, 963 F.3d 385, 391–92 (4th Cir. 2020) ("The bystander provided the description to a police officer in person and in public, in close proximity to the alleged criminal activity and to [defendant], all of which support the bystander's veracity and enhance the reliability of the bystander's tip." (citations omitted)). Indeed, because law enforcement met with Kirby in person, they "could evaluate his demeanor." United States v. Gondres-Medrano, ___ F.4th ___, 2021 WL 2834563, at *5-6 (July 8, 2021). Moreover, "since a known informant exposes himself to possible criminal prosecution or other consequences for giving false information, his reliability is enhanced and less corroboration is required as compared

10

to an anonymous informant." Id. ___ F.4th ___, at *5. As such, a finding of probable cause is not defeated, merely because the affidavit does not explicitly refer to Kirby as reliable.

Defendant also contends that other facts in the affidavit undermine Kirby's credibility. In particular, defendant points to Kirby's statement that he met the Tahoe to purchase drugs from defendant, but that defendant became nervous and left before the transaction was completed. Defendant claims this statement must have been false because Kabrio Donquirius Abrams ("Abrams"), rather than defendant, was in the Tahoe when law enforcement conducted a traffic stop on the Tahoe. The above facts do not undermine Kirby's credibility. Importantly, after law enforcement witnessed the encounter between Kirby and the Tahoe, law enforcement observed the Tahoe return to the residence. (DE 63-1 at 10). "[S]everal minutes" later, the Tahoe left the residence again, and law enforcement performed the traffic stop. (Id.). Thus, Kirby's statement is consistent with defendant becoming nervous during his encounter with Kirby, driving the Tahoe to the residence, and then several minutes later, Abrams driving the Tahoe away from the residence. As a result, the facts in the affidavit do not undermine Kirby's credibility.

### iv. Vague Language

Finally, defendant argues that certain language in the search warrant affidavit was impermissibly vague. Defendant points to information, originating from unknown sources, that he was a "known drug dealer" and that "for several months now the Craven County Sheriff's Office Narcotics Division has received information that [defendant] has been selling heroin and crack cocaine in and around the Craven County area namely New Bern." (Obj. (DE 85) at 3-4, 7). As the magistrate judge correctly determined, these phrases were included in the introduction to set the stage for the rest of the affidavit, and they do not defeat a finding of probable cause.

Defendant also argues that the affidavit's description of the residence as a "known location" for defendant was "wholly conclusory", citing United States v. Jenkins, 666 F. App'x 321, 324 (4th Cir. 2016). (See Obj. (DE 85) at 4, 7). In Jenkins, the Fourth Circuit defined a "bare bones" affidavit as "one that contains 'wholly conclusory statements which lack the facts and circumstances from which a magistrate can independently determine probable cause.'" 666 F. App'x at 324 (quoting Wilhelm, 80 F.3d at 121). It further explained that "[a]n affidavit is bare bones when an affiant merely recites the conclusions of others without corroboration or independent investigation of the facts alleged." Id. (citing Wilhelm, 80 F.3d at 120). In Jenkins, the Fourth Circuit actually held that the affidavit in that case was not "bare bones" because "nonconclusory information supported the affiants' statements that [defendant] was involved in drug dealing." Id.

Here, as in Jenkins, the affidavit is not bare bones because nonconclusory information supported the statement that the residence was a known location for defendant. In particular, the affidavit indicated that defendant drove away from the residence in a Hyundai on the day of the search warrant application. (DE 63-1 at 11). Therefore, inclusion of the phrase "known location" in the affidavit does not defeat a finding of probable cause.

In sum, the issuing judge had a substantial basis to conclude that probable cause supported the search warrant.

      b.    Franks Hearing

Defendant also objects to the magistrate judge's determination that defendant is not entitled to a Franks hearing.

"An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." United States v. Allen, 631 F.3d 164, 171 (4th Cir. 2011). However, the Fourth

Amendment requires a hearing on the validity of a warrant "[w]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks v. Delaware, 438 U.S. 154, 155–56 (1978).

A showing of falsity "'must be more than conclusory' and should include affidavits or other evidence to overcome the 'presumption of [the warrant's] validity.'" United States v. Clenney, 631 F.3d 658, 663 (4th Cir. 2011) (quoting Franks, 438 U.S. at 171). "A defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Rather, there must be evidence showing that the statements at issue are objectively false." United States v. Pulley, 987 F.3d 370, 379 (4th Cir. 2021) (quoting United States v. Moody, 931 F.3d 366, 370–71 (4th Cir. 2019)).

"[T]he defendant must [also] provide facts—not mere conclusory allegations—indicating that the officer subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate. Id. (citing United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990)). "Allegations of negligence or innocent mistake are insufficient." Herring v. United States, 555 U.S. 135, 145 (2009) (quoting Franks, 438 U.S. at 171); United States v. Lull, 824 F.3d 109, 115 (4th Cir. 2016) (internal citations omitted).

Finally, the defendant must establish that the false statement or omission was material, meaning that its inclusion or exclusion is "necessary to the finding of probable cause." Moody, 931 F.3d at 371 (internal citations omitted); United States v. Wharton, 840 F.3d 163, 168 (4th Cir. 2016). "To determine materiality, a court must 'excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would

13

establish probable cause.'" Miller v. Prince George's Cty., MD, 475 F.3d 621, 628 (4th Cir. 2007) (quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)). "The burden of making the necessary showing" to be entitled to a Franks hearing "is thus a heavy one to bear." United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008).

Defendant argues the affidavit contained the following false statements or omissions: 1) omission that Sergeant Sawyer told a dispatcher that a passenger was throwing items out of the Hyundai during the chase; 2) false statement that Sergeant Sawyer saw defendant, rather than a car registered to defendant, leave the residence; and 3) false statement that the substances described in the affidavit were actual controlled substances, instead of suspected controlled substances.

Turning to the first two items, defendant fails to carry his burden to show that the omission and false statement were intentional or in reckless disregard of the truth, as opposed to innocent or merely negligent. See Moody, 931 F.3d at 370–71. Although Sergeant Sawyer's notes reflect that he saw a car registered to defendant, rather than defendant, leave the residence, and he initially told a dispatcher that he thought he saw a passenger throwing items out of the Hyundai during the chase, at the conclusion of the chase, defendant was revealed to be driver of the Hyundai, and no other passengers were found in the car. (DE 63-1 at 11). Thus, in hindsight, it was reasonably apparent to Sergeant Sawyer that he had seen defendant, rather than a passenger, throw items out of the Hyundai, and that he had seen defendant, instead of merely a car registered to defendant, leave the residence. While the affidavit would have been more precise if it had reflected Sergeant Sawyer's initial impressions, uninformed by his retrospective insight, "warrant affidavits are normally drafted by nonlawyers . . . and they must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the

14

opportunity nor judged as an entry in an essay contest." Pulley, 987 F.3d at 380 (quoting Moody, 931 F.3d at 372).

Moreover, the statement and omission were not material. Even if the affidavit indicated that Sergeant Sawyer saw a car registered to defendant leave the residence, and that a passenger was throwing the items out of the Hyundai, the issuing judge would still have a substantial basis to conclude probable cause existed, since the target of the search warrant was the residence, rather than defendant.

Next, defendant challenges the characterization of the substances in the affidavit as "controlled substances" instead of "suspected controlled substances." At the outset, this characterization is not false because lab reports subsequently revealed the substances were controlled substances. This defeats any claim that defendant has to a Franks hearing on the statement. See Moody, 931 F.3d at 370– 71 ("[T]he defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts."); Allen, 631 F.3d at 171.

In sum, the court concludes defendant has not carried the "heavy" burden that must be met to show entitlement to a Franks hearing. See Tate, 524 F.3d at 454.[2]

2. Motion to Dismiss

Finally, defendant objects to the magistrate judge's determination that count one of the indictment sufficiently alleged a conspiracy.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides an indictment shall be a "plain, concise and definite written statement of the essential facts constituting the offense

---

[2] In addition, defendant raises general, conclusory objections to the following determinations in the M&R: 1) that even after considering the issues defendant raised, the affidavit still exhibits a substantial basis to believe that evidence of drug crimes would be found at the residence and 2) that defendant is not entitled to a Franks evidentiary hearing. (See Obj. (DE 85) at 7-8). Upon careful review of the M&R and the record generally, the court finds no clear error in the magistrate Judge's treatment of these issues.

15

charged." Fed. R. Crim. P. 7(c)(1). An indictment is "legally sufficient (1) if it alleges the essential elements of the offense, that is, it fairly informs the accused of what he is to defend; and (2) if the allegations will enable the accused to plead an acquittal or conviction to bar a future prosecution for the same offense." United States v. Rendelman, 641 F.3d 36, 44 (4th Cir. 2011) (citations omitted). "While it is generally sufficient that the indictment describes the offense by using the unambiguous language of the statute, that general description 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" United States v. Quinn, 359 F.3d 666, 672–73 (4th Cir. 2004) (quoting Hamling v. United States, 418 U.S. 117, 117–18 (1974); citing Russell v. United States, 369 U.S. 749, 765 (1962)). "Thus, the indictment must also contain a statement of the essential facts constituting the offense charged." Id. at 673 (quotations and citations omitted) (emphasis in original).

Where, as here, an indictment charges conspiracy to distribute and possess with intent to distribute a controlled substance, it must include the following elements: "(1) an agreement [to distribute and] to possess [ ] with intent to distribute [a controlled substance] existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996).

Count one of defendant's indictment charges:

From a date unknown to the Grand Jury, but no later than on or about December 5, 2018, and continuing up to on or about March 1, 2019, in the Eastern District of North Carolina, the defendant QUENTIN TAVARIS BRYANT, also known as "Boobie", did knowingly and intentionally combine, conspire, confederate, agree and have a tacit understanding with other persons, known and unknown to the Grand Jury, to distribute and possess with the intent to distribute a mixture and substance containing one hundred (100) grams or more heroin, a Schedule I controlled substance, and forty (40) grams or more fentanyl, a Schedule II

> controlled substance, and a quantity of cocaine and cocaine base (crack), Schedule II controlled substances, in violation of Title 21 United States Code, Sections 841(a)(1), 841(b)(1)(B) and (C).

(Indictment (DE 1) at 1). This language sets out the requisite elements of the offense, see Burgos, 94 F.3d at 857, tracks the statutory language, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), (C), and 846, and it is sufficiently particularized to allow defendant to plead an acquittal or conviction to bar a future prosecution for the same offense.

Defendant argues, however, the that the indictment is insufficient because it does not allege the means of the offense, nor does it state the means are unknown. Such allegations are permitted, but not required. See Fed. R. Crim. P. 7(c)(1) ("A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." (emphasis added)). Accordingly, this argument does not provide a basis to dismiss count one of the indictment.

Next, defendant argues that the indictment does not allow him to plead an acquittal or conviction to bar a future prosecution for the same offense because it alleges that the offense "began on a date unknown to the Grand Jury." (Obj. (DE 85) at 10). Defendant's argument is unpersuasive, where he strips that phrase of its context. In full, the indictment reads: "from a date unknown to the Grand Jury, but no later than on or about December 5, 2018, and continuing up to on or about March 1, 2019." (Indictment (DE 1) at 1). This time frame is sufficiently defined. See United States v. Smith, 441 F.3d 254, 261 (4th Cir. 2006) ("Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required . . . Since time is not an element of possession with the intent to distribute and there is no argument that the statute of limitations has expired ... the indictment was not unconstitutionally vague . . ." (internal citations omitted)).

In sum, count one of the indictment sufficiently alleges a conspiracy.

## CONCLUSION

Based on the foregoing, upon careful review of defendant's objections and the record in this case, the court ADOPTS the M&R (DE 84), DENIES defendant's motion to suppress (DE 62), and DENIES defendant's motion to dismiss count one of the indictment (DE 59).

SO ORDERED, this the 26th day of July, 2021.

                                            LOUISE W. FLANAGAN
                                            United States District Judge